IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**GRANDVILL D. LAWES**,

Plaintiff,

v.

**Q.B. CONSTRUCTION, ET. AL.,**

Defendants

**Civ. No.** 12-1473 (DRD)

## OPINION AND ORDER

## INTRODUCTION

On October 22, 2011, on or about 8:00 PM, Plaintiff Grandvill Lawes ("Plaintiff"), a Jamaican merchant marine, was crossing at midblock from the northernmost sidewalk towards the southern sidewalk of Fernandez Juncos Avenue ("Avenue") in San Juan, Puerto Rico.[1] Upon crossing the two lanes of Calle del Tren, an arterial roadway immediately to the north of the Avenue, Plaintiff stopped briefly on the median between Calle del Tren and the Avenue. Plaintiff then crossed the two westbound lanes of the Avenue and stopped on the yellow divider between the westbound and eastbound lanes. However, a vehicle approaching in the northernmost eastbound lane trapped Plaintiff on the divider. Unable to cross the two eastbound lanes, Plaintiff remained on the divider for approximately twenty (20) seconds.[2] Shortly thereafter, as he attempted to evade an oncoming eastbound vehicle, Plaintiff moved slightly into the southernmost westbound lane and was struck by Rafaela Riviere-Andino's Toyota 4Runner.[3]

On and around the date of Plaintiff's accident, Defendants were participating in efforts to revitalize Piers Seven (7) and Eight (8) in Old San Juan, otherwise known as the *Bahia Urbana* construction project

---

[1] *See* Plaintiff's Exhibit 1 for an aerial photograph of the area of the accident.

[2] The time Plaintiff remained on the yellow divider was derived exclusively from the testimony of merchant marine Carlos Gordon, who accompanied Plaintiff on the evening of the accident, to questions from counsel for CSA. *See* Docket No. 647 at 62-69.

[3] The events of October 22, 2011 were compiled from the testimony of merchant marines Rolando Medrano and Carlos Gordon, both present at the time of the accident.

("construction" or "Project"). The construction site limit was approximately ten to fifteen meters from the site of the accident. Q.B. Construction, Inc. ("Q.B"), the general contractor of the Project; Q.B.'s insurance carriers; and CSA Architects and Engineers, LLP ("CSA"), the designers of the Project's Management of Traffic Plan ("MOT"), are the only defendants in this case.

The MOT was the plan for the temporary management of vehicular and pedestrian traffic affected by the Project. *See* Docket No. 644 at 49, lines 16-22. CSA had planned for merchant marines walking to Old San Juan to exit their ships on Pier 9, walk onto the southern sidewalk of the Avenue, take a slight turn westbound, and walk to the point of the intersection of the Avenue and Valdes Street, where a Spanish-language road sign warned them that the sidewalk was closed and advised them to cross "here [at the crosswalk]." *Id*. at 54, lines 15-21; *see also id*. at 129, lines 17-19. Pedestrians were then to cross the Avenue at the crosswalk, under the protection of the stoplight,[4] walk past Calle del Tren, and walk into Old San Juan on the northernmost sidewalk. However, Plaintiff alleges that "(i) the defendants failed to design and or install important traffic signs[5]; (ii) defendants failed to comply with General Note No. 9 which states that QB had to provide artificial illumination at all times; (iii) the defendants failed to comply with General Note No. 11 which required the installation of an orange mesh to insure the safety of pedestrian flow; (iv) defendants did not follow the applicable parts of the [Manual on Uniform Traffic Control Devices], specifically Chapter 6[6]." Docket No. 492 at 11.

---

[4] Some merchant marines testified that the stoplight at the intersection of the Avenue and Valdes Street often did not work properly. However, the stoplight was functioning properly on the night of the accident. *See* Plaintiff's Exhibit 9-H and 9-X; *see also* Docket No. 785 at 10, lines 19-21 (photographs taken at the scene of the accident at approximately 10:00PM on the night of the accident by Agent Luis Torres-Ostolaza).

[5] The Court clarifies that evidence was introduced at trial that there was, indeed, a sign cautioning pedestrians of a closed sidewalk ahead and advising them to cross at the intersection. The sign was attached to a cement pole several meters east of the intersection.

[6] At one point, Plaintiff alleged that Q.B. should have closed-off the southernmost eastbound lane of the Avenue and install a temporary pedestrian walkway through the closed lane. However, the determination to leave the southernmost lane open was made exclusively by the Puerto Rico Highway and Transit Authority ("PRHTA"). It was not Q.B. Construction or CSA's decision. In fact, Ruth Vargas testified that her first MOT submission to PRHTA contemplated closing the southernmost lane. PRHTA returned the proposal with a denial of the application to close the lane and the instruction to notify the PRHTA in case future lane closures were contemplated. *See* Docket No. 644 at 198, lines 6-10. Thus, the Court finds no legal grounds for that argument and disregards it primarily because neither Q.B. nor CSA have dominion over the roadways in Puerto Rico. PRHTA has

## PROCEDURAL HISTORY

On June 14, 2012, Plaintiff filed suit against Q.B. Construction, Inc. ("Q.B."); Constructora Santiago Corp. II; the Municipality of San Juan ("Municipality"); the Puerto Rico Ports Authority ("PRPA"); and MAPFRE PRAICO Insurance Company ("MAPFRE").[7] *See* Docket No. 1. Plaintiff argued Defendants' negligence in designing and implementing the MOT were the proximate cause of his injuries on October 22, 2011 pursuant to Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141.

On March 4, 2014, Plaintiff filed a Second Amended Complaint naming Triple-S Propiedad ("Triple-S"), Integrand Assurance Company ("Integrand"), and ACE Insurance Company ("ACE") as defendants (Docket No. 119). These three corporations insured co-Defendant Q.B. at the time of the accident. *Id*. On February 6, 2015, Plaintiff filed his Third Amended Complaint including MOT-designer CSA as a named defendant (Docket No. 257).

The jury trial began on March 7, 2016. *See* Docket No. 581. On July 6, 2016, twenty-eight (28) trial dates and eleven (11) witnesses later,[8] Plaintiff informed the Court that he had no more witnesses and rested his case. *See* Docket No. 879. In turn, Defendants sought leave to file written motions for Judgment as a Matter of Law prior to their case in chief. *Id*.

On July 17, 2016, Defendant Q.B. Construction, joined by its insurance carriers, filed a *Motion for Judgment as a Matter of Law* (Docket No. 884). Q.B. alleged Plaintiff failed to present evidence to establish any of the three elements of a *prima facie* case under Article 1802. Specifically, Q.B. averred Plaintiff lacked evidence to establish Q.B.'s implementation of the MOT was negligent. *See id*. at 46. Further, Q.B.

---

"complete control and supervision of any traffic or transportation facilities owned, operated, constructed, or acquired by it," 9 P.R. LAWS §2004(d).

[7] On August 20, 2012, the Court dismissed all claims against Constructora Santiago Corp. II (Docket No. 29) pursuant to Plaintiff's *Notice of Voluntary Dismissal without Prejudice as to Constructora Santiago II* (Docket No. 28). The claims against the Municipality and MAPFRE were dismissed on January 22, 2016 for failing to abide by the notice requirements provided in 21 P.R. Laws Ann. §4703. *See* Docket No. 474.

[8] Q.B. Construction employees Edgardo Velez and Enrique Cruz; CSA employee and MOT-designer Ruth Vargas; merchant marines Oliver Scotland, Ricky Ferrol, Carlos Gordon, and Rolando Medrano; Plaintiff Grandvill Lawes; Guillermo Requejo; Third-Party Defendant Rafaela Riviere-Andino; and PRPD Agent Luis Torres-Ostolaza. No expert witness testified before the jury. Plaintiff's engineering expert, Ralph Aronberg, was barred from testifying due to Plaintiff's noncompliance with Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702. *See* Docket No. 868; *see also* Fed. R. Civ. P. 26 and Fed. R. Evid. 702.

argued Plaintiff had not presented any evidence that Q.B.s implementation of the MOT was the proximate cause of his injuries on the night of his accident. *See id.*

On August 7, 2016, Plaintiff filed his opposition to Q.B.'s *Motion for Judgment as a Matter of Law* (Docket No. 903). Plaintiff charged Q.B. with failing to comply with their duty to "control pedestrian flow as mandated in the contract documents, case law, industry standard [sic] and lawful orders from an authorizing agency." *Id.* at 34. Plaintiff alleges that Q.B.'s failure to comply with those standards was a breach of their duty of care towards pedestrians and, consequently, was a proximate cause of Plaintiff's accident. *Id.* at 35.

On July 18, 2016, Defendant CSA filed its *Motion for Judgment as a Matter of Law* (Docket No. 887). CSA set forth similar arguments to those in Q.B.'s motion. Namely, CSA asseverated that Plaintiff had failed to present any evidence at trial from which a reasonable jury could find "either that CSA was negligent in designing the [MOT] . . . or that the allegedly negligent design of the MOT was the proximate cause of Plaintiff's accident." *Id.* at 1.

On August 8, 2016, Plaintiff opposed CSA's *Motion for Judgment as a Matter of Law* (Docket No. 905). In sum, Plaintiff argues CSA's negligent decision to leave a portion of the southernmost sidewalk open between the cement barrier and the intersection, as opposed to placing the barrier at the intersection, created a foreseeable risk of midblock pedestrian crossings. Thus, Plaintiff alleges CSA's decision, too, was a proximate cause of Plaintiff's injuries. *See id.* at 11.

Pending before the Court are Defendant Q.B. Construction and Defendant CSA's *Motions for Judgment as a Matter of Law* (Docket Nos. 884 and 887) and Plaintiff's *Memorandums in Opposition* to Defendants' motions (Docket Nos. 903 and 905). For the reasons discussed below, the Court hereby **GRANTS** Defendants' *Motions for Judgment as a Matter of Law*.

## JUDGMENT AS A MATTER OF LAW UNDER RULE 50(a)

Because granting a Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a) deprives the plaintiff of bringing his case before the jury, these motions are to be "granted cautiously and sparingly." *Rivera Castillo v. Autokirey, Inc.,* 379 F.3d 4, 9 (1st Cir.2004) ("Even in the best circumstance, the standards for granting a motion for judgment as a matter of law are stringent."). Rule 50(a) motions will only be granted where "after having examined the evidence as well as all permissible inferences drawn therefrom in the light most favorable to non-movant, the court finds that a reasonable jury could not render a verdict to the party's favor." *Peguero-Moronta v. Santiago*, 464 F.3d 29, 45 (1st Cir. 2006)(citing *Figueroa–Torres v. Toledo–Davila,* 232 F.3d 270, 273 (1st Cir.2000)); *see also Mayo v. Schooner Capital Corp.,* 825 F.2d 566, 568 (1st Cir.1987)("[W]e must examine the evidence in the light most favorable to the plaintiff and determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion—that there is a total failure of evidence to prove plaintiff's case."); and Fed. R. Civ. P. 50(a). In conducting its analysis, the Court may not, and will not, "take into account the credibility of witnesses, resolve evidentiary conflicts, nor ponder the weight of the evidence introduced at trial." *Irvine v. Murad Skin Research Labs., Inc.,* 194 F.3d 313, 316–17 (1st Cir.1999)). However, the Court must ensure that the judgment rests upon "more than conjecture and speculation." *Am. Steel Erectors v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 815 F.3d 43, 52 (1st Cir. 2016)(citing *Trigano v. Bain & Co., Inc.,* 380 F.3d 22, 28–29 (1st Cir.2004)); *see also Webber v. Int'l Paper Co.*, 417 F.3d 229, 233 (1st Cir. 2005)(holding that a party cannot prevail where the verdict necessarily rests upon evidence which is overly speculative or conjectural)(citing *Ricci v. Alternative Energy Inc.,* 211 F.3d 157, 162 (1st Cir.2000)). Also, the Court need not disregard uncontradicted evidence which favors the defendants. *See Peguero-Moronta*, 464 F.3d at 45 (1st Cir. 2006); *see also Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 445 (1st Cir.1989). Finally, and most important, Plaintiff must have presented "more than a mere scintilla of evidence in its favor" to

withstand a motion for judgment as a matter of law. *Invest Almaz v. Temple–Inland Forest Prods. Corp.,* 243 F.3d 57, 76 (1st Cir.2001).

## ANALYSIS

Article 1802 states that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  31 P.R. Laws Ann. § 5141.  Under Article 1802, a plaintiff suing for personal injuries must prove four elements by a preponderance of the evidence: 1) a duty requiring the defendant to conform to a certain standard of conduct; 2) a breach of that duty; 3) proximate cause; and 4) damages.  *Coyne v. Taber Partners I*, 53 F.3d 454, 459-462 (1st Cir. 1995); *Woods-Leber v. Hyatt Hotels of P.R.*, 124 F.3d 47, 50 (1st Cir. 1997).  "These requirements cannot be satisfied unless the plaintiff proves that the injury was reasonably foreseeable, and, thus, could have been avoided had the defendant acted with due care."  *Woods-Leber*, 124 F.3d at 50-51.  Therefore, to recover on a theory of negligence, Plaintiff must show that the negligent acts or omissions of the defendants were the proximate cause of his injuries.  *Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967 (1st Cir. 1991)(stating that Puerto Rico defines legal cause as "proximate cause," and not actual or factual cause). Because the existence of damages is not disputed, the Court will center on whether or not Plaintiff has provided evidence of Defendants' legal duty of care to pedestrians, Defendants' potential breach of those duties, and that those breaches were proximate causes of his injuries. Failure to provide "more than a mere scintilla of evidence" of any of aforementioned elements of a *prima facie* 1802 claim entitles defendants to judgment as a matter of law. *See Invest-Almaz*, 243 F.3d at 76.

### Duty and Breach

Breach of duty "has, as its name implies, two sub-elements: duty and breach." *Vazquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 49 (1st Cir. 2007). Usually, "the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." *Id*. In other words, the duty of care "is anticipating reasonably probable injuries to probable victims." *Irvine v. Murad*

*Skin Research Laboratories, Inc.*, 194 F.3d 313, 322 (1st Cir. 1999). To satisfy a legal duty, typically "one must act as would a prudent and reasonable person under the circumstances." *See Ortiz v. Levitt & Sons of P.R., Inc.,* 1 P.R. Offic. Trans. 407 (1973)); *see also Claybaugh v. Condado Plaza Hotel & Casino*, 2010 WL 2998853, at *4 (D.P.R. 2010).

Where determining the applicable standard of care requires experience or knowledge that the average lay person does not have, "the plaintiff must present evidence, usually through an expert witness, as to the relevant standard of care for the design and the way(s) in which the defendant's design fell below that standard." *Vazquez-Filippetti*, 504 F.3d at 49; *see also Prado Alvarez v. R.J. Reynolds Tobacco Co.,* 313 F.Supp.2d 61, 73 (D.P.R.2004), *aff'd,* 405 F.3d 36 (1st Cir.2005).  In cases involving the actions of third-parties, such as Riviere-Andino, "it is particularly critical that a plaintiff present evidence of the applicable standard of care to demonstrate that the defendant had a duty to foresee" the third-party's conduct. *Id*. at 54. In sum, like in medical malpractice cases, where determining the applicable duty of care is also beyond the purview of a lay jury, evidence sufficient to assist the jury in understanding Defendants' duty of care to pedestrians is essential. *See, e.g., Pages-Ramirez v. Ramirez-Gonzalez*, 605 F.3d 109, 113 (1st Cir. 2010); *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.,* 394 F.3d 40, 43 (1st Cir.2005) (citing *Rolon–Alvarado v. Municipality of San Juan,* 1 F.3d 74, 78 (1st Cir.1993); and *Lama v. Borras,* 16 F.3d 473, 478 (1st Cir.1994)).

### i.   Defendant CSA Architects and Engineers, LLP

Plaintiff's theory of liability seeks to impose fault upon the general contractor and the designer of a construction project for an accident involving a jaywalking pedestrian struck by an automobile. Plaintiff has not alleged that a third-party created a dangerous condition without CSA's knowledge. Plaintiff avers CSA's design of the MOT made the area surrounding the Project inherently dangerous to pedestrians. Specifically, Plaintiff alleges CSA improperly placed the cement barrier blocking the southernmost sidewalk of the Avenue at midblock, not at the intersection. *See Vazquez–Filippetti,* 504 F.3d at 50 *(*claims based on

7

allegedly dangerous properties can alternatively take the form of a defective or negligent design case); *see also, e.g.,* Docket No. 905. Therefore, like the plaintiff in *Vazquez-Filippetti*, Plaintiff has brought forth a negligent design claim against CSA. *See id.* (Pedestrian who was struck by a car while using bank's outdoor ATM brought personal injury action against bank, liability insurer and driver of car. The First Circuit found Plaintiff's claims against the bank consisted of negligent design claims.). Because a lay jury certainly may not rely on personal experience and knowledge to establish the duty of care owed to pedestrians by designers of temporary management of traffic plans, Plaintiff must have presented "evidence [at trial] as to the applicable standard of care, because the jury must be sufficiently familiar with that standard to evaluate whether [CSA's MOT] design complied with it," *Id.* at 51.

Plaintiff does not argue that the duty of care in this case is within the purview of a lay jury. Instead, he argues the holding in *Vazquez-Filippetti* is inapplicable to the instant case because "two (2) engineers were called to testify [Edgardo Velez of Q.B. and Ruth Vargas of CSA], and [Ruth Vargas] . . . defined the standard of care . . ." Docket No. 905 at 4. In support of his position, Plaintiff provided excerpts from Vargas' trial testimony where she purportedly defines the standard of care applicable to CSA. Specifically, Plaintiff includes excerpts of Vargas' testimony from March 9, 2016, where she stated that where "there's a sidewalk [being demolished], you have to provide for it" and where she recognized that the MOT did not force pedestrians to cross at the intersection. *Id.* at 5. Plaintiff also included an excerpt from Vargas' testimony on that same day where she referred to the Manual on Uniform Traffic Control Devices ("MUTCD") as the "Bible" of MOT designers. *Id.* at 7. Plaintiff concludes that Vargas' testimony is sufficient to establish that "the failure to close off the sidewalk up to the intersection [of Fernandez Juncos Avenue and Valdes Street] was a design choice based on information[9] that Ruth Vargas knew was not correct," and was a breach of CSA's legal duty to pedestrians. *See* Docket No. 905 at 9. However, Plaintiff's conclusion lacks the requisite legal and evidentiary support.

---

[9] Information regarding the possible placement of a Metropolitan Bus Authority bus stop between the barrier and the intersection.

Once again, the Court notes that Plaintiff "bears the burden of establishing the applicable standard of care." *Vazquez–Filippetti,* 504 F.3d at 50. After analyzing hundreds of pages of trial transcripts, Plaintiff was unable to reproduce testimony that assures the Court the jury is "sufficiently familiar with that standard to evaluate whether the defendant's design complied with it." *Id*. at 51. Vargas' testimony that she had to "provide" for a demolished sidewalk is insufficient. The testimony alone does not help the jury understand what she meant by "providing" for a demolished sidewalk. Further, her testimony that the MOT did not "force" pedestrians to cross at the intersection of Fernandez Juncos Avenue and Valdes Street, and that the only way to force pedestrians to cross at the intersection was to place the cement barrier at the level of the intersection, is also insufficient. Specifically, Plaintiff Vargas never stated, and no evidence has been introduced on the matter, that the applicable standard of care for MOT designers placing barriers on sidewalks is to force pedestrians to cross at the intersection nor has she established the lengths a designer must go to in "forcing" pedestrians to cross at the intersection. Further, the MUTCD, a traffic engineer's Bible, has not been admitted into evidence and cannot be considered by the Court.

As the record stands today, Plaintiff is asking the jury to determine the duty of care an MOT designer owes to pedestrians based solely on several vague statements by the MOT's designer with no further elaboration or documentary support. Without making speculative leaps, a lay juror would not be able to reliably determine the parameters of this CSA's duty of care nor would a juror be able to discern what Vargas implied when she testified regarding the MOT. Further, lay jurors could not make a reliable determination regarding whether or not placing a barrier several hundred feet from an intersection constitutes a breach of CSA's duty of care. Accordingly, as the record is devoid of documentary evidence, factual testimony, or expert testimony clarifying the standard of care applicable to CSA in a manner sufficient for lay jurors to understand the complexities of the duties of an MOT designer, Plaintiff's negligent design claim fails as a matter of law. *See, e.g., Vazquez-Filippetti* (Reversing the District Court's denial of a

Rule 50(a) motion because the Plaintiff had failed to provide evidence sufficient for lay jurors to understand the complex duty of care.)

### ii. Defendant Q.B. Construction, Inc.

Like his arguments against Defendant CSA, Plaintiff's allegations against Q.B. involve matters beyond the knowledge of lay persons. Plaintiff alleges Q.B. was responsible for the safety of pedestrians during the construction of the Project, as provided for by local law and industry standards. *See* Docket No. 903 at 4. Plaintiff lists several documents in support of his position that he has presented sufficient evidence of the applicable duty of care—Section 20MT102 of the MOT; Sections 10.1 and 10.2 of the general conditions of Q.B.'s contract with the project manager; and the Puerto Rico Supreme Court's decision in *Ramos v. Carlo*, 85 D.P.R. 353 (1962). *See id*. We discuss each document in turn.

#### *20MT102*

Plaintiff argues the MOT provides a satisfactory framework of the duty of care Q.B. owes to pedestrians. Specifically, Plaintiff asserts General Notes 9, 10, and 12 of Section 20MT102 establish Q.B.'s duty of care.[10] Note 9 states "[t]he Contractor shall provide adequate illumination in the work area at all times." *See* Plaintiff's Exhibit 16, 20MOT102. Plaintiff asserts this duty was breached on the night of the accident as a lightpost within the construction site, right beside the cement barrier, was flickering on that evening. *See* Plaintiff's Exhibits 9-G (photo taken on the night of the accident showing the lightpost on), 9-B (photo taken on the night of the accident showing the lightpost off), and 9-F (photo taken on the night of the accident showing the lightpost on).

First, the fact the lightpost was sometimes on and other times off is irrelevant to the Court's analysis. Ruth Vargas testified at trial that Note #9 did not require Q.B. to ascertain whether the light post on the southern sidewalk within the construction site was functioning properly. She testified that Q.B.

---

[10] The General Notes on the MOT were written by the Puerto Rico Highway and Transit Authority, the governmental agency who analyzed and approved CSA's MOT plan.

Construction was to provide lighting only if it was "moving a lightpost, or turning one off, or illuminating one as part of the project construction." Docket No. 645 at p. 20, lines 13-21.[11] Plaintiff counters that Ruth Vargas' testimony regarding illumination is a matter of credibility and weight for the jury, as it allegedly contradicts the writing of the note. This may be so. However, in light of the fact that Ruth Vargas designed the MOT, and that she was brought as a witness to discuss the preparation and design process of the MOT, this argument is unpersuasive. The argument is further weakened by Plaintiff's own argument, made while discussing CSA's duty of care, that Ruth Vargas testified as an engineering expert. The Court may not hold Vargas to be an expert when it benefits Plaintiff and then disregard her uncontroverted testimony on Note #9 when it does not.

Second, the language of Note #9 is vague. The note refers to providing adequate lighting in the work area, yet does not delineate what would be considered inadequate, what are the limits of the work area, nor does it define the purpose of this note—whether to protect workers at night or to protect those walking outside the construction. Plaintiff would have the Court believe the Note imposes an absolute duty upon Q.B. to ensure all lightposts within the construction limits are functioning properly. The Court is skeptical of this argument, considering Third-Party Defendant Puerto Rico Electric and Power Authority ("PREPA") is the sole entity with the power and means to repair public utilities. *See* 22 P.R. Laws § 196(g)-(l) (delineating PREPA's powers and duties, including exclusive duty of maintenance and repair of public lighting utilities).

Finally, as the record stands, the extent of Q.B.'s duty to provide illumination, if any, is unclear. On this subject, the record only contains the Note itself and Vargas' testimony regarding the note's meaning. Because the testimony and the language of the Note are contradictory, the true implications of the Note are unknown. Without evidence clarifying the implications of these types of notes in the construction industry, the Court cannot find Plaintiff has met his burden of providing evidence regarding the applicable duty of

---

[11] No other witness has testified regarding Note #9. Ruth Vargas' testimony on this matter is the only evidence on the record.

care.[12] Tasking a lay jury with deciding what is "adequate lighting within the working area" without specifically delineating the parameters of adequacy, without establishing the limits of the "working area," and without providing evidence regarding the the intention of the Note requires the factfinder to deliberate blindly, armed with nothing more than unsubstantiated speculation.

Plaintiff avers that, regardless of Note #9's significance, Note #10 imposes an independent duty of care towards pedestrians upon Q.B. and Q.B. breached this duty. Note #10 provides that Q.B. "shall read the Specification Number 638[13] 'Maintenance and Protection of Traffic,' of the Standard Specification Manual." *See* Plaintiff's Exhibit 16, 20MT102; *see also* Plaintiff's ID 29. The Note alludes to Specification 638, a document never admitted into evidence, which imposes certain duties upon a project contractor. Specifically, Specification 638 reads "the contractor . . . has the primary responsibility for providing the necessary traffic control devices and taking other appropriate measures for the protection of the public and his personnel." Plaintiff reads this as imposing duties upon Q.B. to monitor the effectiveness of CSA's MOT in controlling pedestrian traffic. On the other hand, Ruth Vargas testified the Puerto Rico Highway and Transit Authority ("PRHTA") is responsible for ensuring MOT is having the intended results. *See* Docket No. 644 at pages 63, 70, and 109-112 ("The MUTCD stipulates that it's the governing agency [which ensures the MOT is working properly], which in this case is the [PRHTA]."). However, whether or not Note #10 imposes safety duties upon Q.B., or whether PRHTA is the entity responsible for pedestrian safety, is inconsequential. Without a witness, preferably an expert, to explain to the jury what traffic control devices are "necessary" and what "other appropriate measures" would be sufficient for a contractor to comply with Specification 638, Plaintiff cannot meet his burden in establishing the applicable duty of care.

---

[12] Throughout his Opposition to Q.B.'s Motion for Judgment as a Matter of Law (Docket No. 903) Plaintiff alludes to the fact that Ruth Vargas' testimony regarding this note is self-serving as Q.B. is also a named defendant. However, this is an absurd argument in light of the fact that Q.B. Construction filed a Third-Party Complaint against CSA and, thus, both defendants' interests are at odds. *See* Docket No. 90.

[13] Whether or not Specification 638 applies to Q.B. Construction in the first place is disputed. However, the Court will analyze Note #10 as if Specification 638 applies to Q.B. and has been admitted into evidence in order to afford Plaintiff every conceivable opportunity to have his case reach the jury.

The language of Note #11 leads the Court to the same conclusion. Plaintiff correctly noted that no evidence has been presented to contradict the Note, which states "the Contractor shall provide access to all business entrances at all times. No business shall be left without an access after working hours end. Orange safety fences shall be installed between the sidewalk and the working area for the safety of the pedestrian flow." The Note appears to address potential blockages of business entrances by the construction. However, Plaintiff asseverates Q.B.'s failure to install an orange safety fence on the median between the northern sidewalk of Calle del Tren and the construction site, which would force pedestrians to the intersection, was a breach of their duty of care to pedestrians. Further, Plaintiff alleges Q.B. breached their duty of care to pedestrians for failing to install an orange safety blocking off the portion of the southernmost sidewalk between the barrier and the intersection, which would force pedestrians to cross at the intersection. Although the language of Note #11 is uncontroverted, and testimony has not been admitted to contradict it, the Note itself provides little guidance to a lay juror in determining an appropriate standard of care. Moreover, the Note appears to be directed primarily at contractors blocking business entrances and does not appear intended to establish any particular duty of care. Obviously, the Note itself is insufficient to provide a sufficient framework for a juror to understand its ramifications.

The General Notes alone are insufficient for lay jurors to understand the complexities of the duties of a contractor towards pedestrians around a construction area. First, pedestrians are not mentioned in the General Notes. The closest reference to pedestrians comes in Specification 638, where the contractor is charged with ensuring the public safety and pedestrians are members of the general public. Second, the Notes are rife with vague terms like "adequate", "appropriate", and "necessary" which, without further elaboration, provide little guidance to a juror with no prior experience as a general contractor in projects of this sort. Accordingly, allowing the jury to deliberate regarding breach of the alleged duties imposed upon Q.B. Construction in 20MT102 would contravene *Vazquez-Filippetti's* holding that, prior to deliberating on a

complex duty of care, the jury must be "sufficiently familiar with that standard to evaluate whether the defendant . . . complied with it." *See* 504 F.3d at 51.

### Sections 10.1 and 10.2 of the General Conditions of Q.B.'s Contract

Aside from the MOT documents, Plaintiff also directs the Court to Article 10 of the General Conditions of Q.B. Construction's contract with the Project Manager. *See* Joint Exhibit 1. The Conditions read as follows:

> **§ 10.1 Safety Precautions and Programs**
> The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract.
>
> **§10.2 Safety of Persons and Property**
> The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
> 1. Employees on the Work and other persons who may be affected thereby;
> 2. The Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contract or the Contractor's Subcontractors or Sub-subcontractors; and
> 3. Other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures, and utilities not designated for removal, relocation, or replacement in the course of construction.

Based on this language, Plaintiff understands the jury may deliberate on whether or not Q.B. complied with its duty of care to pedestrians. However, the operative word above is "reasonable." Undoubtedly, discerning between a reasonable contractor and an unreasonable contractor is beyond the purview of a lay jury. The General Conditions of Q.B.'s contract are not sufficient to establish the appropriate duty of care. *See Vazquez-Filippetti*, *supra* page 13 at 51.

### Ramos v. Carlo, 85 D.P.R. 353 (1962)

In a last ditch attempt to persuade the Court, Plaintiff directs the Court towards the Supreme Court of Puerto Rico's decision in *Ramos v. Carlo*, 85 D.P.R. 353 (1962). As a threshold matter, Plaintiff's failure

to provide a certified translation of the decision is sufficient grounds to entirely disregard this argument. *See Puerto Ricans For Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008)( "Where a party makes a motion [ ] based on a decision that was written in a foreign language, the party must provide the district court with and put into the record an English translation of the decision."). In yet another act of generosity by the Court, prevalent throughout this case, the Court will briefly address Plaintiff's flawed interpretation *Ramos* decision.

The *Ramos* court held that sidewalks are a place of privilege for pedestrian security. *See Ramos*, 85 D.P.R. at 364.[14]   Thus, a pedestrian walking on a sidewalk must walk with a reasonable degree of caution, aware of her surroundings, but is not forced to walk in constant vigilance and in search of any hidden hazards or dangerous conditions product of another's negligence. *See id*. Accordingly, when a sixty-year (60) old woman was injured when she tripped on metal strips discarded on a public sidewalk, and the debris was product of the activities of a nearby business owner, the court found the business owner had been negligent for creating a hazard that could not be perceived by a reasonably cautious pedestrian. *See id*. Plaintiff understands the decision as imposing a duty upon Q.B. to keep the sidewalk reasonably safe. Plaintiff avers Q.B. breached that duty by installing the cement barrier on the southernmost sidewalk of the Avenue.

Nine years after *Ramos*, the Supreme Court of Puerto Rico decided *Vazquez v. A.F.F.*, 99 D.P.R. 547 (1971).[15] There, the plaintiff sought redress for injuries sustained after tripping on a power cable bolted to the ground on a public sidewalk. The court held that pedestrians need not be warned of obstacles in plain view to a person walking with a reasonable degree of caution. *See id*. at 550. As such, a pedestrian who is harmed by an object which is in plain view was, by definition, not reasonably cautious. *See id*.

---

[14] Translation by the Court.
[15] Translation by the Court.

In light of the above stated principles, the Court finds Plaintiff's argument has little merit. Had Plaintiff tripped, fell, and injured himself on construction equipment left on the sidewalk by Q.B., *Ramos* may apply. However, the cement barrier was in plain view and Plaintiff was not injured by the cement barrier. Plaintiff was injured by a driver who ran him over as he attempted to cross the Avenue while jaywalking. Further, although the court in *Ramos* held that pedestrians are to enjoy greater security privileges on sidewalks, Plaintiff was not injured on the sidewalk. *See Ramos*, 85 D.P.R. at 364. In fact, Plaintiff had not walked on the southernmost sidewalk at all immediately leading up to the accident. Moreover, were Plaintiff to base his theory of liability on the *Ramos* decision, he would need evidence to illustrate how a contractor who installed a cement barrier on the southern sidewalk of an avenue has created a hazard that may have proximately caused an injury to a reasonably cautious pedestrian walking on the opposite side of the avenue and crossing southbound. *See Vazquez-Filippetti*, *supra*, page 13 at 51. Plaintiff has failed to provide evidence to those effects and, as such, his claim against Q.B. Construction also fails as a matter of law.

### iii.   Conclusions Regarding Breach of the Duty of Care

Whether or not a plaintiff has provided evidence to establish a duty of care is a question of law. *See Wojciechowicz*, 582 F.3d at 66. To establish CSA and Q.B.'s duty of care to pedestrians affected by the Project, Plaintiff was had to provide evidence sufficient to "allow the jury to properly evaluate defendant's actions." *Claybaugh v. Condado Plaza Hotel & Casino*, 2010 WL 2998853, at *5 (D.P.R. 2010). Plaintiff did not. Therefore, Plaintiff has failed to meet the standards set forth in *Vazquez-Filippetti*.

Moreover, "absent proof of the legal duty owed . . .  it is virtually impossible to prove either breach or proximate cause." *Rolon-Alvarado v. Municipality of San Juan*, 1 F.3d 74, 80 n.6 (1st Cir. 1993). "[B]reach, after all, depends directly on the contours of the duty owed." *Id*. In other words, without first establishing the applicable duty of care, Plaintiff cannot establish that the duty has been breached and Plaintiff's Article

1802 claim fails on two essential prongs. Accordingly, Plaintiff's claims against CSA Architects and Engineers, LLP and Q.B. Construction, Inc. fail as a matter of law.

### Proximate Cause

After a plaintiff demonstrates that the defendant breached its duty of care, plaintiff must show that defendant's negligence was the proximate cause of his injuries. *Vazquez-Filippetti*, 504 F.3d at 49; *see Malave-Felix*, 946 F.2d at 972 ("one becomes liable, however, only if his negligence is the proximate cause of someone else's injuries."). Under Article 1802, proximate cause is defined in terms of foreseeability, which requires that a reasonable person could have foreseen the consequences of what actually occurred. *Vazquez-Filippetti*, 504 F.3d at 49; *Wojciechowicz v. U.S.*, 582 F.3d 57, 67 (1st Cir. 1999); *Malave-Felix*, 946 F.2d at 971-72; *Grajales-Romero v. Am. Airlines, Inc.*, 194 F.3d 288 (1st Cir. 1999). "In order for an event to be foreseeable, a reasonable, prudent person must be able to conclude from the evidence that 'the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances.'" *Coyne*, 53 F.3d at 460. To establish proximate cause, a "plaintiff must prove that the accident was 'foreseeable and could have been avoided if the defendant had not breached its duty of care.'" *Wojciechowicz,* 582 F.3d at 67 (quoting *Grajales-Romero,* 194 F.3d at 296).

The Court need not go further as Plaintiff's Article 1802 claim lost its footing when the Court found Plaintiff had failed to provide evidence regarding duty and breach. *See Rolon-Alvarado*, 1 F.3d at 80 n.6 ("proximate cause, in turn, depends on the nature and effect" of the breach of the legal duty owed). Further, whether or not a breach of duty was the proximate cause of Plaintiff's injuries is typically a question for the factfinder. *See Wojciechowicz*, 582 F.3d at 66. However, the fact "[t]hat causation is **ordinarily** a fact question does not make it **invariably** a fact question" *Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 12 (1st Cir. 1998)(citing *Peckham v. Continental Casualty Ins. Co.,* 895 F.2d 830, 837 (1st Cir.1990) (emphasis in original)). Notwithstanding, because of the conjectural nature of Plaintiff's theory, the Court

felt compelled to delve into a brief analysis of Plaintiff's proximate cause theory assuming, *arguendo*, that Plaintiff had successfully established duty and breach.

Because Plaintiff charges both Q.B. and CSA with failing to take adequate measures to force pedestrians to the intersection,[16] Plaintiff had to present evidence that Defendants' failure to do so was a proximate cause of Plaintiff's injuries. In other words, Plaintiff must have provided evidence sufficient for a reasonable juror to determine that Plaintiff's accident was "foreseeable and could have been avoided if [Defendants had forced pedestrians towards the intersection]." *Grajales–Romero,* 194 F.3d at 296; *see also Woods-Leber*, 124 F.3d at 51. Due to his injuries, Plaintiff was unable to testify about what prompted him to cross the Avenue when and where he did on October 22, 2011. Merchant marines Oliver Scotland, Ricky Ferrol[17], Carlos Gordon, and Rolando Medrano testified at trial, presumably to show the jury how merchant marines were behaving in crossing the Avenue after the barrier was installed on the southernmost sidewalk.

The Court notes two observations gleaned from the testimony of these men—the merchant marines' testimony regarding their walking habits was consistent from witness to witness and neither of them mentioned the location of the barrier on the southern sidewalk as the reason they would jaywalk. Specifically, all the merchant marines testified that their that their only concern when deciding where to cross was the "hot corner" near the Salvation Army building on the northwest corner of the intersection between the Avenue and Valdes Street, an area where several homeless men gathered in the evenings. Specifically, the men testified that, once the southern sidewalk was closed for construction, they would always cross the Avenue illegally[18] to avoid the men on the corner. *See* Docket No. 645 at 66, lines 19-25 (testimony of Oliver Scotland regarding avoiding the "hot corner"); *id*. at 228, line 13-16 (testimony of

---

[16] Plaintiff avers Q.B. should have fenced off the area between the barrier and the intersection with orange mesh, pursuant to the General Notes of the MOT.

[17] Ricky Ferrol testified on behalf of Defendants.

[18] *See* 9 P.R. Laws Ann. §5252 (Puerto Rico law requiring pedestrians to cross roadways at the pedestrian crosswalk).

Rolando Medrano regarding avoiding the "hot corner"); Docket No. 647 at 37, lines 3-7 (testimony of Carlos Gordon regarding avoiding the "hot corner" and being offered marijuana on one occasion by one of the beggars); and Docket No. 659 at 17, line 25 (testimony of Ricky Ferrol regarding avoiding the "hot corner")[19]. However, neither CSA nor Q.B. is, or would be, responsible for ensuring the "hot corner" was clear of any safety hazards. Instead, Puerto Rico law provides that Municipalities are responsible for maintaining their sidewalks "reasonably safe." *Del Toro v. Gov't. of the Capital*, 93 P.R.R. 467, 471 (1966)("The municipalities are bound to maintain their streets and sidewalks in reasonably safe condition for the persons who usually travel thereon.")(quoting *Davidson v. H.I. Hettinger & Co.*, 62 P.R.R. 286 (1943) and *Velez v. The Capital*, 77 P.R.R. 663 (1954)). Because the Municipality of San Juan is no longer a defendant, the entity that may have been liable for failing to ensure the safety of those who walked by the corner is no longer party to the suit. *See* Docket No. 474.

In order to avoid the corner, Medrano, who witnessed Plaintiff's accident from the southern sidewalk of the Avenue, testified that he would "[scurry] along the edge of the concrete barriers on the edge of the road." Docket No. 645 at 160, lines 19-25. Gordon, who was walking with Plaintiff on the night of the accident, also testified that "[they] used to use the outside of the barrier, outside of the construction . . . [t]oward San Juan and back to the vessel."  Docket No. 647 at 94, lines 1-23. Gordon testified that "skirting the barriers" was their preferred path to Old San Juan until a group of merchant marines "almost got run down." *Id*. Perhaps most damning to Plaintiff, however, was Gordon's admission that "[merchants marines] don't go up to [the intersection of the Avenue and Valdes Street] because there is a hot corner . . . [w]e don't cross there because – we cross where we cross." *Id*. at 46. Later in his testimony, to questions from counsel for CSA, Gordon reaffirmed his position that he would "avoid the people [on the hot corner]

---

[19] The Court emphasizes that the "hot corner" issue has no bearing on the liability of any of the named parties. The corner itself was not under the dominion of any party, nor were the alleged beggars who would gather on the corner. Furthermore, some merchant marines testified that the stoplight at the intersection of Fernandez Juncos Avenue and Valdes Street, at times, did not work properly. However, the stoplight was unquestionably functioning properly on the night of the accident. *See* Plaintiff's Exhibit 9-H and 9-X; *see also* Docket No. 785 at 10, lines 19-21 (photographs taken at the scene of the accident at approximately 10:00PM on the night of the accident by Agent Luis Torres-Ostolaza).

because [he is] not here for trouble in San Juan" even if the barricade was installed at the traffic light. *Id*. Lastly, Ricky Ferrol, the only merchant marine who testified to having crossed at the crosswalk with Plaintiff, mentioned that the only time he used the pedestrian crosswalk was when the men were not on the corner. *See* Docket No. 659 at 18, lines 1-8.

Based on the testimony, and absent the Plaintiff's own account, only speculation could prompt the conclusion that Plaintiff's motivation in crossing the Avenue where he did was the location on the barrier and not the men that were located on the corner that night. *See Rodriguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 36 (1st Cir. 2011) ("[S]peculation or conjecture will not cut it when it comes to proximate cause."); *see also* Docket No. 647 at 52, lines 24-25 (testimony from Carlos Gordon that he saw men on the "hot corner" prior to the accident). Further, no reasonable juror could find that Plaintiff was the only merchant marine who decided to cross at midblock because he could, and not because he felt compelled to avoid the men on the corner. This conclusion would be directly contrary to what all his shipmates were doing.

Although the Court is cognizant of its duty to make all reasonable inferences in Plaintiff's favor, the only reasonable inference to draw regarding Plaintiff's decision to cross where he did is that he sought to avoid the men on the "hot corner." Based on the testimony from the merchant marine walking with Plaintiff that evening to and from Old San Juan, merchant marines would have avoided the hot corner, even in the event that Defendants had actually attempted to force pedestrians to the intersection. Thus, although jaywalking is foreseeable pedestrian behavior in Puerto Rico, Plaintiff's witnesses testified that, regardless of the barrier's location, they would still jaywalk and/or skirt the cement barriers in order to avoid the men on the "hot" corner. This fact is fatal to Plaintiff's proximate cause argument. Further, no testimony has been heard on why Plaintiff elected to break away from Carlos Gordon, who was speaking to a fellow merchant marine, and cross the Avenue when nobody else was crossing, with cars approaching in both

directions. *See* Docket No. 647 at 20, lines 7-15. This inexplicable decision makes Plaintiff's proximate cause argument significantly more abstract.

As such, the Court finds Plaintiff has failed to present "more than a mere scintilla of evidence in its favor" on the issue of proximate cause. *See Invest Almaz v. Temple–Inland Forest Prods. Corp.,* 243 F.3d 57, 76 (1st Cir.2001). Based on the evidence on the record, specifically the testimony of Plaintiff's fellow merchant marines, no reasonable juror could find the location of the barrier, or any Defendant's failure to force pedestrians to the intersection, was a proximate cause of Plaintiff's injuries on that night. *See Peguero-Moronta v. Santiago*, 464 F.3d 29, 45 (1st Cir. 2006). Accordingly, in addition to failing as a matter of law on the prongs of duty and breach, Plaintiff's Article 1802 claim fails to establish a conceivable, non-speculative theory of proximate cause.

## CONCLUSION

Despite his arguments to the contrary, without an expert witness to delineate the appropriate industry standards applicable to each defendant, explain the extent of any potential breaches of those duties, and elaborate a conceivable theory of proximate cause, Plaintiff's case cannot survive Defendants' motions. Even after examining the evidence in the light most favorable to Plaintiff and making all reasonable inferences in his favor, the Court is left with only one conclusion—there is an absolute lack of evidence to prove Plaintiff's case. *See Mayo v. Schooner Capital Corp.,* 825 F.2d 566, 568 (1st Cir.1987).

Plaintiff's Article 1802 claim rests upon four pillars, all of which he must substantiate with testimonial evidence. Failure to provide evidence of any of the four prongs is fatal. In other words, under Article 1802, a Plaintiff's claim is a house of cards. If one of Plaintiff's cards falls, the house crumbles. Here, the parties agree that Plaintiff sustained injuries on October 22, 2011. However, aside from the parties' agreement damages, Plaintiff has failed to provide evidence of any other prong. On Defendants' legal duties of care, Plaintiff failed to provide evidence that would "allow the jury to properly evaluate defendant's actions." *Vazquez-Filippetti*, 504 F.3d at 49. Without an established duty, Plaintiff's house of cards

collapses as "it is virtually impossible to prove either breach or proximate cause." *Rolon-Alvarado*, 1 F.3d at 80 n. 6. Finally, Plaintiff failed to provide any evidence that the placement of the barriers on the southernmost sidewalk, or the failure to force pedestrians to the intersection, had any bearing on the sequence of events of October 22, 2011 as all fact witnesses testified that they would never cross at the intersection when there were men on the "hot corner,". *See Wojciechowicz,* 582 F.3d at 67.

Based on the analysis above, Defendants are independently entitled to judgment as a matter of law on the issue of legal duty, breach, and proximate cause. *See Coyante v. Puerto Rico Ports Auth.*, 105 F.3d 17, 19 (1st Cir. 1997)(Affirming the District Court's entry of Judgment as a Matter of Law where Plaintiff had failed to provide evidence of all essential elements of a tort claim.). As the old adage goes, reasonable minds can differ. However, only unreasonable minds could find in Plaintiff's favor as the record stands today. Accordingly, the Court hereby **GRANTS** Defendants' *Motions for Judgment as a Matter of Law* (Docket Nos. 884 and 887) and hereby **DISMISSES** the present case **WITH PREJUDICE**. Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of September, 2016.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge